UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| SHANE BAILEY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14-CV-47 CAS |
| | ) | |
| DON FELTMANN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter under 42 U.S.C. § 1983 is before the Court on defendant Don Feltmann's Motion for Summary Judgment. The motion is fully briefed and ready for decision. For the following reasons, the motion will be granted.

**I. Legal Standard**

The Eighth Circuit has recently articulated the appropriate standard for consideration of motions for summary judgment, as follows:

> Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (internal citations and quotation marks omitted). "Although the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078-79 (8th Cir. 2008) (cited case omitted).

## II. Facts

On March 13, 2012, plaintiff Shane Bailey, then eighteen years of age, was at a friend's house in Jefferson County, Missouri. Plaintiff and the friend had an argument about a girl and plaintiff became angry. Plaintiff left the house and went out to his truck and hit the driver's side mirror with his right hand, then got in the truck and kicked and punched the windshield with his right foot and right hand, so hard that he broke out the windshield. Plaintiff's right hand and fingers were cut by glass as a result of hitting the windshield. Plaintiff got in the truck, sans windshield, and started driving to meet his cousin at the Big River. While driving on Highway 30, plaintiff ran out of gas and pulled the truck over to the side of the road near Cedar Hill Fire Station No. 2. Plaintiff immediately called 911 and asked for assistance for his cut hand. This occurred at approximately 2:55 p.m.

Two paramedics from the Big River Ambulance District responded to plaintiff's 911 call. Diane Smith, one of the paramedics, testified based on the report she prepared shortly after the incident.[1] Paramedic Smith testified that the report stated plaintiff was agitated at times, but then

---

[1]Paramedic Smith testified she had no independent memory of responding to plaintiff's 911 call. The statements Ms. Smith made in the Big River Ambulance report are admissible under Rule 803(5) of the Federal Rules of Civil Procedure, as she testified that she once knew about the matter but could not recall it well enough to testify fully and accurately, the report was made by her when

2

became cooperative with the paramedics and they treated and dressed plaintiff's hand and wrapped it in bandages, but thereafter plaintiff again became agitated and refused further care. Plaintiff denies that he refused further care and the Court accepts this denial as true for purposes of summary judgment.

The Jefferson County Sheriff's Department police report of the incident states that defendant Feltmann, a Deputy Sheriff, responded to the scene after being advised by dispatch that paramedics on the scene were requesting an emergency response from law enforcement for an unknown reason. Pl.'s Ex. 2 at 3. Feltmann arrived after plaintiff's hand was already bandaged by the paramedic. Feltmann knew plaintiff's hand was cut or injured, but did not see the cuts because of the bandage. Blood from the cuts on plaintiff's hand was leaking through the gauze bandage and Feltmann saw this. Feltmann did not ask plaintiff or the paramedics what treatment they had given plaintiff before he arrived at the scene, and plaintiff did not receive any further care from the paramedics after Feltmann arrived.

Paramedic Smith's report states in pertinent part, "JCSD [Jefferson County Sheriff's Department] Deputy advised that the pt [patient] required sutures to his hand for the wounds he sustained when he punched out his windshield. JCSD stated that they would transport pt to ER for evaluation and care prior to being processed." Pl.'s Ex. 8 at 1. Paramedic Smith testified that this portion of her report was true and accurate, but it paraphrased rather than quoted the conversation. Smith Dep. at 51:8-12. The paramedic testified, "We advised deputies on the scene that the[] patient required sutures to his hand, and that he needed to be taken to a ER - an ER to be evaluated." Id.

---

the matter was fresh in the memory, probably immediately following the incident but no later than the end of her shift, and accurately reflected her knowledge at that time. See Pl.'s Ex. 5, Diane Smith Dep. at 25-26; Pl.'s Additional Undisputed Material Facts at 11, n.5 (Doc. 37).

at 52:1-4. The paramedic testified she believed plaintiff's hand required further treatment because the report noted swelling and bruising to the right hand and the bleeding was controlled. Id. at 28:22-29:1.

Feltmann administered a field sobriety test to plaintiff and placed him under arrest for careless operation of a vehicle and minor in possession of alcohol. Feltmann threw plaintiff to the ground and said he was going to pepper spray him, then handcuffed plaintiff. Plaintiff does not recall Feltmann saying anything else at the scene. Plaintiff was not pepper sprayed. Feltmann did not ask plaintiff if he thought he needed to go to the ER. Feltmann did not take plaintiff to the ER but instead transported him to the Jefferson County Jail. Plaintiff did not complain to Feltmann about the injury to his hand while at the scene or while being transported to the jail, although his facial expressions indicated he was in pain. Feltmann looked at plaintiff while he was grimacing in pain.

Plaintiff was released from the Jefferson County Jail sometime after midnight but before the sun came up on March 14, 2012, and was picked up by his mother, brother and sister. Pl.'s Dep. at 98:6-23. Plaintiff went to the Emergency Room at SSM St. Clare Health Center in Fenton, Missouri at around 9:35 a.m. and was seen by a physician. Medical records show that plaintiff received stitches for a laceration in his head,[2] but his hand lacerations were cleansed and left open because the wounds were "almost 24 hours old." Pl.'s Ex. 9 at 4. Plaintiff avers that he was in severe pain from the time he was taken into custody by Feltmann until the cuts were cleansed and he received pain medication at St. Clare Health Center. The medical records describe plaintiff's pain as "mild,"

---

[2]Plaintiff's complaint does not include any allegations concerning the laceration to his face.

4

"aching," and "constant since onset." Pl.'s Ex. 9 at 2. A small glass fragment was removed from plaintiff's hand and the hand was X-rayed. Plaintiff was sent home with ibuprofen.[3]

Plaintiff has not talked to or seen any doctor, clinician or other health care provider about the condition of his right hand since he was treated at St. Clare Health Center on March 14, 2012. Plaintiff testified that "every now and then" he has pain between his pointer and index fingers. Plaintiff also testified he has approximately nine scars on his right hand and fingers, and had no scars there prior to March 13, 2012. Plaintiff testified that one of the scars was "about an inch" long. Plaintiff has never seen a dermatologist about the scars.

## III. Discussion

Plaintiff's complaint asserts a single claim under 42 U.S.C. § 1983 for denial of medical care. Plaintiff alleges that defendant Feltmann was deliberately indifferent to his serious need for treatment for the lacerations to his hand, because Feltmann failed to take plaintiff to the hospital ER even though the paramedic instructed him to do so and Feltmann stated he would. Plaintiff alleges that as a result of Feltmann's actions, his hand did not heal properly and is permanently scarred. Plaintiff seeks compensatory and punitive damages.

Feltmann moves for summary judgment on the basis that plaintiff cannot show verifying medical evidence demonstrating a detrimental effect of the delay in medical treatment about which he complains. Feltmann also asserts that the uncontroverted facts preclude any conclusion that he

---

[3]The medical records contain little information about the number, size or depth of the cuts on plaintiff's hand and fingers. The physical exam notes state in pertinent part: "numerous lacerations on dorsum of right hand. 1.5 lac in index/middle finger webspace. No visible or palpable FB." Pl.'s Ex. 9 at 3. The Progress Notes state: "hand lacerations were cleansed and left open since the wounds are almost 24 hours old. xray was neg for FB. a small glass fragment was removed before xray. The facial lac was sutured. home with ibuprofen." Id. at 4.

5

acted with deliberate indifference toward plaintiff. Finally, Feltmann asserts that he is entitled to qualified immunity.

As an arrestee, plaintiff's constitutional claims based on failure to provide medical care arise under the Fourteenth Amendment, but the Eighth Circuit has held that the Eighth Amendment's deliberate indifference standard also applies to the claims of arrestees. Carpenter v. Gage, 686 F.3d 644, 650 (8th Cir. 2012) (analysis of deliberate indifference claim brought by arrestees is the same as claim brought by inmate), cert. denied, 133 S. Ct. 955 (2013); see Thompson v. King, 730 F.3d 742, 746 (8th Cir. 2013) (applying deliberate indifference standard to claims of denial of medical care by estate of arrestee).[4]

A claim that officials were deliberately indifferent to the medical needs of inmates involves both an objective and a subjective component. Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997); see also Farmer v. Brennan, 511 U.S. 825 (1994). In a case concerning the deprivation of medical care, a plaintiff must demonstrate that (1) he suffered an objectively serious medical need; and (2) the defendant actually knew of the medical need but, subjectively, was deliberately indifferent to it. See Grayson v. Ross, 454 F.3d 802, 808-09 (8th Cir. 2006). "An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or

---

[4]Plaintiff asserts that it is an "open question in the Eighth Circuit whether an arrestee's claim for denial of medical care is analyzed under the Fourth Amendment objective reasonableness standard," citing Carpenter v. Gage, 686 F.3d 644, 650 (8th Cir. 2012), but this assertion is not borne out by a careful reading of Carpenter or other Eighth Circuit precedent. The Eighth Circuit has consistently analyzed denial of medical care claims of arrestees and pretrial detainees using the deliberate indifference standard. See Fourte v. Faulkner County, Ark., 746 F.3d 384, 387 (8th Cir. 2014); Butler v. Fletcher, 465 F.3d 340, 344-45 (8th Cir. 2006) (citing cases); Carpenter, 686 F.3d at 650 (citing McRaven v. Sanders, 577 F.3d 974, 979 (8th Cir. 2009) and Spencer v. Knapheide Truck Equip. Co., 183 F.3d 902, 905 & n. 3 (8th Cir. 1999)); see also Thompson v. King, 730 F.3d 742, 746 (8th Cir. 2013) (applying deliberate indifference to § 1983 serious medical need claim of arrestee in pretrial detention).

is so obvious that even a 'layperson would easily recognize the necessity for a doctor's attention.'" Jones v. Minnesota Dep't of Corrections, 512 F.3d 478, 481 (8th Cir. 2008) (quoting Coleman, 114 F.3d at 784).

When a delay in medical treatment is the alleged constitutional deprivation, as in this case, the objective seriousness of the deprivation must also be measured "by reference to the *effect* of delay in treatment." Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (quotation marks and quoted case omitted), abrogation on other grounds recognized by Reece v. Groose, 60 F.3d 487, 492 (8th Cir. 1995). "To establish this effect, the [plaintiff] 'must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment[.]'" Laughlin v. Schriro, 430 F.3d 927, 929 (8th Cir. 2005) (quoting Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997)). On summary judgment, plaintiff must offer evidence that a delay in treatment had a detrimental effect. In the absence of such evidence, plaintiff "fail[s] to raise a genuine issue of fact on an essential element of his claim." Laughlin, 430 F.3d at 929; accord Beyerbach, 49 F.3d at 1327.

As for the second element, "In order to demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." Thompson, 730 F.3d at 746-47 (quoted case omitted). "This onerous standard requires a showing more than negligence, more even than gross negligence, but less than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate[.]" Id. (internal quotations and citations omitted).

In support of his motion, defendant Feltmann cites Eighth Circuit cases establishing general legal principles relevant to § 1983 claims based on denial or delay of medical care to an arrestee, but does not cite any illustrative cases that offer any factual similarity to the present case. In

7

opposing the motion, plaintiff similarly does not cite to any factually analogous cases. Cases concerning the alleged denial or delay of medical care are highly fact specific. See Bozeman v. Orum, 422 F.3d 1265, 1274 (11th Cir. 2005).

The Court in independent research has reviewed numerous cases that concern § 1983 claims for the denial or delay of medical care for cuts or lacerations. It cannot be said as a matter of law that every laceration requiring stitches is necessarily a serious medical need that demands immediate medical attention. See, e.g., Boyett v. County of Washington, 2006 WL 3422104, at *17 (D. Utah Nov. 28, 2006) (a "superficial head injury, even one requiring sutures, does not qualify as a serious medical need."). In some cases, cuts or lacerations are not severe enough to constitute serious medical needs, and whether stitches were required can be relevant to the analysis. See, e.g., Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988) (police officers did not violate arrestee's constitutional rights by fourteen-hour delay in obtaining medical treatment for cut under his eye that had stopped bleeding and removal of quarter-inch piece of glass embedded in his palm because there was "no suggestion that the delay in taking him to the hospital exacerbated his injuries in any way"; while sliver of glass in detainee's palm "was no doubt uncomfortable," it nevertheless "was not a serious injury" and fourteen-hour delay in medical treatment "did not violate his constitutional rights" because cuts and bruises were "minor" and "did not require either stitches or painkiller"); see also Fernandez v. Metro Dade Police Dep't, 397 F. App'x 507, 512 (11th Cir. 2010) (reversing denial of qualified immunity, holding arrestee failed to establish he suffered an objectively serious medical need where there was an eight-hour delay in providing medical treatment for injuries suffered during his arrest, including a bloody nose and mouth that lasted over five minutes, facial bruising, pain, disorientation and blood "clogs" in his nose, where upon examination at hospital he required no stitches or bandages and no medication other than non-prescription pain pills); Montavon v. Town

8

of Southington, 1997 WL 835053, at *4 (D. Conn Sept. 29, 1997) (arrestee did not establish existence of objectively serious medical need based on cuts and scrapes where there was no evidence his bleeding was profuse or that he was experiencing other conditions and he did not request medical care while in police custody).

In other cases, courts have held that no objectively serious medical need existed even though the plaintiff alleged it was deliberate indifference not to provide stitches to suture a laceration. See, e.g., Howard v. Jones, 2012 WL 602641, at *4 (E.D. Ark. Jan. 24, 2012) (granting summary judgment on deliberate indifference to medical need claim where plaintiff asked for treatment for a gash on his head but did not receive any medical care until seven days later, and then did not receive stitches because the wound was healing); Robinson v. Davis, 2013 WL 3716543, at *4 (E.D. Ark. July 12, 2013) (granting summary judgment on deliberate indifference claim where plaintiff asserted that after several hours' delay, he received a Steri-strip to close his head wound instead of stitches, resulting in a permanent scar).

Courts have also held that a delay in providing treatment for a laceration requiring stitches does not constitute deliberate indifference to a serious medical need. See, e.g., Andujar v. Rodriguez, 486 F.3d 1199, 1204 (11th Cir. 2007) (paramedics were not deliberately indifferent to arrestee's serious medical need–dog bite wounds that severely impaired the arrestee's ability to walk and ultimately required stitches–where they cleaned and dressed the wounds and stopped the bleeding, then released arrestee to police to be taken to jail, which delayed his getting stitches for two hours); Sickler v. Curtis, 2012 WL 3778941, at *8 (E.D. Ca. Aug. 31, 2012) (no deliberate indifference to a serious medical need where nurse failed to refer the inmate plaintiff with a laceration to the medical treatment unit as she was supposed to do, but he was seen there three to four hours later and the on-call doctor said his sutures could wait until the next day); but see

9

Alsobrook v. Alvarado, 477 F. App'x 710, 713 (11th Cir. 2012) (denial of motion to dismiss based on qualified immunity was proper, as allegations of an unjustifiable delay of one hour and forty minutes in treating a continuously bleeding "gash to the back of [plaintiff's] head, a cut under his right eye, a bloody nose, [and] a cut high on his forehead by the hairline" while his clothes were covered in blood and his face was swelling and bruising were sufficient to plead deliberate indifference.); Trotter v. Kemna, 2005 WL 2319759, at **2-4 (W.D. Mo. Sept. 9, 2005) (summary judgment denied where nurse said prisoner should be sent for "Steri-strip" to treat cuts from attack with wooden knife, but he never was sent and wound bled for at least three to four days).

Viewing the facts of this case in the light most favorable to plaintiff, the Court finds that plaintiff's cuts were not a serious medical need, as it was not obvious to a layperson that plaintiff's hand required immediate medical attention. See, e.g., Carpenter v. Gage, 686 F.3d 644, 650 (8th Cir. 2012) (need for medical treatment not obvious despite officer being told plaintiff was suffering a stroke). Although the paramedic told Feltmann that plaintiff's hand needed stitches and further evaluation, it is uncontroverted the condition had not been diagnosed by a physician and there is no evidence the paramedic said that plaintiff needed immediate or emergency medical attention. Feltmann knew plaintiff's hand had been examined and then bandaged by the paramedic, and this prevented Feltmann from seeing the cuts. Although plaintiff asserts that blood was leaking from his cuts through the gauze and that Feltmann observed the blood, there is no allegation or evidence the bleeding was profuse or uncontrolled and the paramedic's report states that the bleeding was controlled. Also, it is uncontroverted that plaintiff did not ask to be taken to the ER, complain of pain, or make any other statement to Feltmann concerning his physical condition either at the arrest scene or during transport to the jail.

10

Because it would not have been obvious to a layperson that plaintiff's cuts were a serious medical need requiring immediate attention, plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." Crowley, 109 F.3d at 502 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994)); see also Jackson v. Hallazgo, 30 F. App'x 668 (8th Cir. 2002) (unpublished per curiam) (citing Coleman, 114 F.3d at 784 ("An inmate's failure to place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment precludes a claim of deliberate indifference to medical needs.")); O'Neal v. White, 221 F.3d 1343, 2000 WL 960938, at *1 (8th Cir. July 12, 2000) (unpublished per curiam) (citing Crowley, 109 F.3d at 502, concluding that plaintiff's "failure to submit verifying medical evidence to show a detrimental effect from any delay in tests, surgery, or alternative treatments was fatal to his Eighth Amendment claim")).

Here, plaintiff offers no medical evidence concerning the detrimental effect of the delay in treatment. Plaintiff does not offer evidence that his lacerations became infected or that the injury was exacerbated by the delay. Plaintiff testified only that he did not receive stitches and has scars and an occasional ache between two fingers that he did not have before the injury. Plaintiff has no medical evidence, however, that any or all of his nine lacerations would have received stitches had he been taken to the ER the day of the incident rather than the next morning. Further, plaintiff does not have medical evidence that if he had obtained stitches on March 13, 2012, he would have no scarring on his hand and no occasional ache between two of his fingers as a result of the injury he sustained in punching out his windshield.

In the absence of evidence that the delay in treatment had a detrimental effect, plaintiff "fail[s] to raise a genuine issue of fact on an essential element of his claim." Laughlin, 430 F.3d at 929; accord Beyerbach, 49 F.3d at 1326-27 (broken hand could be a serious medical need, but

11

plaintiff inmate failed to present verifying medical evidence that the defendants "ignored an acute or escalating situation or that delays adversely affected his prognosis, given the type of injury" in the case) (internal quotation marks and quoted cases omitted).

Even if plaintiff had established the existence of a jury question as to whether the lacerations on his hand and fingers constituted a serious medical need, his claim fails because he cannot show the second requirement, subjective deliberate indifference. To prove deliberate indifference, plaintiff must show that Feltmann had actual knowledge the failure to take him to the emergency room for immediate medical treatment posed a substantial risk of serious harm. See Carpenter, 686 F.3d at 651. Under the facts as established on summary judgment, plaintiff cannot show that Feltmann was deliberately indifferent–i.e., that he was more than grossly negligent and his mental state approached criminal recklessness–by transporting plaintiff to the jail to be booked instead of to the emergency room, thus leaving the matter of further medical attention for plaintiff's lacerations in the hands of jail officials.[5] Feltmann's conduct, tested by the ordinary standards of negligence, amounts to no more than mere negligence. "It is obduracy and wantonness, not inadvertence or error in good faith," that violates the Eighth Amendment in connection with "supplying medical needs." Whitley v. Albers, 475 U.S. 312, 319 (1986).

Thus, plaintiff fails to meet his burden to demonstrate that there is a genuine issue of material fact as to whether he had an objectively serious medical need, see Laughlin, 430 F.3d at 929, or as to whether Feltmann was deliberately indifferent to his serious medical need. Accordingly, the Court concludes summary judgment should be granted in favor of Feltmann.

---

[5]Plaintiff did not name any jail officials as defendants in this action, and there is no evidence or allegation as to whether plaintiff asked Jefferson County jail officials for medical attention to his right hand.

## IV. Conclusion

For the foregoing reasons, the Court finds there are no genuine issues of material fact that remain in this matter, and concludes that defendant Feltmann has established he is entitled to summary judgment as a matter of law on plaintiff's claims against him under 42 U.S.C. § 1983. As a result, the Court does not reach Feltmann's argument that he is entitled to summary judgment based on qualified immunity.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Feltmann's motion for summary judgment is **GRANTED**. [Doc. 30]

An appropriate judgment will accompany this Memorandum and Order.

                                                  **CHARLES A. SHAW**
                                                  **UNITED STATES DISTRICT JUDGE**

Dated this  16th  day of December, 2014.